IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS.

GEORGE P. GOODMAN JR.,            )
            PLAINTIFF,            )
                                 )
      v.                         )    CASE No. 03-202-WDS
                                 )
ROGER E. WALKER JR., CHARLES     )
HINSLEY, EUGENE McADORY,         )
TOM MAUE, SYEVE KEIM and         )
MAVIS GROSS,                     )
            DEFENDANTS.          )

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT.

NOW COME, The Plaintiff, George P. Goodman Jr., pro se, and in
further support of his motion for partial summary judgment,
respectfully submits this memorandum of law, and states as follows:

# I.  INTRODUCTION

The Plaintiff, George P. Goodman Jr., filed suit under 42 U.S.C.§1983
and 42 U.S.C.§2000cc. et seq., claiming that the defendants have been,
and are violating his First Amendment right to practice his religion,
Fourteenth Amendment right to equal protection of the law, access to
the court, and that they have substantially burdened the free exercise
of his religion contrary to the protections of 42 U.S.C.§2000cc.
Religious Land Use and Institutionalized Persons Act ("RLUIPA"). His
claim centers around the fact that he is a practitioner of the Wicca
Faith. The recognized symbol of the Wicca faith is the Pentacle or
Pentagram.(see, Plaintiff's Aff. Ex.31). Plaintiff alleges that
despite prior approval, and Departmental Rules allowing religious
significant medallions, defendants arbitrarily confiscated plaintiff's
medallion, while continuing to allow similarly situated adherents of
other religious denominations to posses and wear their religiously
significant medallions.

Defendants claim that pursuant to 20 Ill. Adm. Code 425.90(c),
that the medallion is to large, and allegedly "Gang Related", and
therefore contraband. although defendants cite DR.425.90(c) as
justification for the confiscation and subsequent ban, they offer no
evidence to support their claim. Further, defendants admit that they
failed to conduct a review of the issue and request as required by 20
Ill.Adm. Code 425.101. (see, answers to plaintiff's interrogatories,

attached as exhibit 28 ¶¶ 8,9,11,12,13,14,15,16,17,18,20,21,34,36, 37,38,40,42,43,44,45,and 46.)

Additionally, defendants have raised as Affirmative Defenses 1) Qualified Immunuty; 2) 42 U.S.C.§1997e(e); and the 11th Amendment. (see, Answer to Plaintiff's Amended Complaint, Ex. 27 Plaintiff's Aff.) These defenses are not supported by the facts or documentation. For these reasons, Plaintiff moves this Honorable Court to grant him partial Summary Judgment.

## II.  STANDARD OF REVIEW.

Summary judgment is appropriate and shall be rendered when the pleadings, depositions, answers to interrogatories, together with affidavits, show no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P.56(c); Celotex Corp. v. Catrett, 477 U.S.317,322-344(1986). Moreover, "[R]ule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and one which that party will bear the burden at trial.Id.

The initial burden of the moving party is to establish that there is no question of fact that shows that it will be outcome determinative in the case. Id. Once the moving party has met this burden, the opposing party must go beyond it's pleadings and set forth specific facts that show there is a genuine issue of material fact. Id. The opposing party cannot rely on general conclusory allegations, but rather, "Must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Valentine v. Joliet Township High School Dist., 802 F.2d 981,986 (7th Cir.1986)

All inferences from the record must be viewed in a light most favorable to the non-moving party. Cahorn v. Michael, 913 F.2d 327,331 (7th Cir.1990) However, the court is not required to evaluate every conceivable inference that can be drawn from evidentury matters, only reasonable ones. Spring v. Sheboygan Area School Dist.,865 F.2d 883, 886 (7th Cir.1989)

- 2 -

If the evidence is only colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, 477 U.S.242,250 (1986). Once the moving party seeking summary judgment meets it's initial responsibility of informing the court of the basis for it's action and identifying the portion of those pleadings and supporting documents which it believes demonstrates the absence of genuine issues of material fact. Id.

Moreover, the non-moving party may not defeat a motion for summary judgment by simply resting on it's pleadings. Beard v. Whitley,850 F.2d 406,410 (7th Cir.1988). Rather, Rule 56(c) requires the non-moving party to go beyond it's pleadings and demonstrate the existance of a genuine issue for trial by demonstrating specific facts in it's own affidavits, or by depositions, answer to interrogatories or admissions on file. Celotex,477 U.S. at 324. In this case the Plaintiff submits that there are no genuine issues of material fact as to the basis of this motion. The plaintiff therefore requests summary judgment to be entered in his favor against the defendants.

## III. ARGUMENT

A. The Defendants have Violated The Plaintiff's Right To Free Exercise
   Of His Religion By Confiscating His Pre-Approved Religiously
Significant Pentacle Medallion.

In order to state a claim under section §1983, a plaintiff must allege sufficient facts to show that defendants deprived him of some right secured by the Constitution or Federal law. Parrat v. Taylor, 451 U.S. 527,535 (1981). Plaintiff asserts that his free exercise of religion, as guaranteed by the First Amendment, and 42 U.S.C.§2000cc., is being denied by defendants. It is well established that inmates do not forfeit all of their constitutional protections by way of their confinement in jail. Bell v. Wolfish,441 U.S. 520,545 (1979). Specifically, inmates must be given reasonable opportunities to pursue their religious faiths comparable to the opportunities afforded to prisoners of other faiths. Cruz v. Beto, 405 U.S.319,322 (1972). Nevertheless, the Supreme Court has held that prisoner's exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials such exercise poses ["The likelihood to prison order or stability, or otherwise interferes with the

- 3 -

legitimate objectives of prison enviroment."] Jones v. North Carolina Prison Labor Union,433 U.S.119,132 (1977). While inmates retain their right to free exercise of religion, prison officials may impinge on these constitutional rights only if the regulation ["is reasonably related to legitimate penological interests."] Turner v. Safley, 482 U.S. at 89. While courts should generally defer to the expertise in these matters involving prison administration, this difference is only afforded ["in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response."] Wolfish, 441 U.S. at 548. ["A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."] Turner, Id. at 89-90. Likewise, ["The existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but an exaggerated response to prison concerns."] Id. Courts have held that they afford no difference to the policies and judgment of prison officials if there is "substantial evidence on the record to indicate that the officials have exaggerated their response." Pell v. Procunier,417 U.S.817,822, 41 L.Ed. 2d 495, 94 S.Ct. 2800 (1974) at 827. Also, in Whitney v. Brown, 822 F.2d 1068,1076 (6th Cir.1989), the court rejected a conclusory approach where "anything prison officials can justify is valid because they have somehow justified it." and this was recently upheld in Flagner v. Wilkinson,2001 U.S. App.Lexis 2560; 241 F.3d 475 (6th Cir.). Inmate's free exercise of religion cannot be contingent on administrative inconveniences, where such inconveniences are not greater than those presented by all prison rules. Campos v. Caughlin, 854 F.Supp.194 (1994). Courts will closely scrutinize reasonableness of any restriction imposed on prisoner's activity in exercise of religion, especially so where adherents of one faith are more heavily restricted than those of another. ["Proof which would be more than adequate support for decision of prison officials in most fields does not necessarily suffice with prisoner's constitutional guarantee of freedom of religion."] Cooper v. Pate, 382 F.2d 518 (C.A.7 (Ill.1967)). "Allegations that discrimination between Christians and Muslim inmates at state correctional facility where plaintiff was confined existed because defendant officials provided access to religious materials to the former and not the latter was sufficient to raise a claim upon which relief could be granted." Cochran v. Rowe,438 F.Supp.566 (1977).

- 4 -

In this case, defendants allege that plaintiff's pentacle religious medallion was confiscated because it could be used for gang activity. (Plaintiff's Aff. Ex.27 ¶ 12-Defendants answer .) but the defendants have failed repeatedly to provide any factual evidence of this to support their claim. Defendants cite Departmental Rule (DR.) 425.90(c), and Disciplinary Rule #205 (Sucurity Threat Group, or Unauthorized Organizational Activity), neither of which offer any connection or reference to pentacle medallions. In fact, they admit that it does not address pentacle medallions.(Plaintiff's Aff. Ex.27 ¶ 10). Further, when specific proof was requested through discovery, and interrogatories, defendants refer to the same rules which are not evidence at all. (Plaintiff's Aff. Ex.28 ¶ 7). Defendants submitt allegations that they lack the necessary information to admit or deny: 1) That plaintiff is a Wicca. 2). The pentacle is the recognized symbol of the Wicca religion. (Plaintiff's Aff. Ex.27 ¶ 3)  3).Whether they reversed their ban on pentacles. (Plaintiff's Aff. Ex.27 ¶ 4)  4). Whether IDOC. approved plaintiff's pentacle. (Plaintiff's Aff. Ex.27 ¶ 5);  5). Whether plaintiff retained his medallion in level-1 institutions for over 2 years. (Plaintiff's Aff. Ex.27 ¶ 6);  6). Whether adherents of other religions are allowed to possess religious medallions specifically representing gang signs. (Plaintiff's Aff. Ex.27 ¶ 13);  7). Whether plaintiff's medallion was returned to him when temporarily transferred from Menard to Pontiac. (Plaintiff's Aff. Ex.27 ¶ 14), but by these very statements defendants admit that they failed to review and investigate the facts in plaintiff's grievances and letter as required by state law and 20 Ill. Adm.Code.. (Plaintiff's Aff. Ex.(s) 1,2,3,4,12,13,15,16,18,20 26,and 31.) All these documents conclusively show that defendants possessed this knowledge, and were repeatedly made aware of it by the plaintiff. In violation of the First Amendment, Fourteenth Amendment, 42 U.S.C.§2000cc., and states statutes, defendants CHOSE neither to acknowledge nor correct these ongoing constitutional violations. Further, defendants admit that they have confiscated and banned plaintiff's pentacle medallion.(Plaintiff's Aff. Ex.27 ¶ 7), but through their answers to plaintiff's interrogatories and request for documents, prove that they failed to comply with 20 Ill.Adm.Code §425. which requires them to review requests for religious item, and maintain records of such reviews, and pass these requests along to the Religious Practices Advisory Board for final resolution.(Plaintiff's Aff. Ex.9)

- 5 -

In their answers to plaintiff's request for documents and interrogatories, defendants admit that no such documents exist. As the defendants requested several extentions to respond to plaintiff's request, stating in their motion that it was because they wanted to do a thorough and complete job of disclosure, it is clear that their confiscation and ban was contrary to law and ILDOC. Rules. Therefore defendants have violated and continue to violate plaintiff's constitutionally protected rights, and they have offered no factual evidence to refute the plaintiff's claims.

B.   Defendants Have Substantially Burdened Plaintiff's Free Exercise of Religion in violation of 42 U.S.C.§2000cc. et.seq.
Religious Land Use and Institutionalized Persons Act. (RLUIPA)

42 U.S.C.§2000cc.-1 Protection of religious exercise of institutionalized persons, provides

(a) General Rule:
No government shall impose a substantial burden on the religious exercise of a person residing in, or confined to an institution, as defined in section 1997 of this title, even if that burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person-
(1) Is in furtherance of a compelling governmental interest; and
(2) Is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.§2000cc.-5(7)(A)   (A) In General:
The term "religious exercise" includes any exercise of religion whether or not compelled by, or central to, a system of religious belief.

The plaintiff has provided conclusive evidence that he is a practitioner of the Wicca Faith, and as such is in need of his protective pentacle religious medallion. (complaint). This belief is religious in nature and sincerely held. (Affidavit in support of of motion for preliminary injunction 7-15-03). Plaintiff has supplied to this court, evidence that defendants were made aware of the need and religious significance of plaintiff's pentacle medallion. (PLaintiff's Aff. Ex.(s) 4,20,26 and 31).  The purpose of RLUIPA, is to protect inmates and other institutionalized persons from substantial burdens in freely practicing their religions. Charles v. Verhagen, 348 F.3d 601 (7th Cir. 2003).

- 6 -

Under RLUIPA, the plaintiff must first establish that the challenged regulation creates a substantial burden on the exercise of his religious beliefs. If successful, the burden then shifts to the defendants, who must demonstrate that the regulation (1) Furthers a compelling state interest and (2) By the least restrictive means. Charles v. Verhagen, 2002 WL 2012625 (W.D.Wis.2002). RLUIPA expressly provides that it be construed broadly  to favor the protection of religious exercise. See, 42 U.S.C.§2000cc.-3(g). RLUIPA affords protection to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief". 42 U.S.C.§2000cc.-5(7)(A). Based on the foregoing, there can be no doubt that defendants have substantially burdened plaintiff's free exercise of religion. The defendants have provided NO factual evidence of safety or security threats caused by plaintiff's medallion despite specific discovery requests. See,(Plaintiff's Aff. Ex.28 ¶¶ 7,11,12,13,14,15,16,17,18,19,20,21,22,40, 41,42,43,44,45,and 46.), yet plaintiff has provided IDOC generated documentation showing that he has possessed this medallion in level-1 Maximum security institutions since June of 2000. (PLaintiff's Aff. Ex.(s) 10,12,13,15,and 16).

"[R]elying on other inmates reactions to a religious practice is a form of heckler's veto. The RFRA does not allow governments to defeat a claim so easily. A governmental body that imposes a "substantial" burden on a religious practice must demonstrate, and not just assert that the rule at issue is the least restrictive means of achieving a compelling governmental interest." O'Bryan v. Bureau Of Prisons, 349 F.3d 399;2003 U.S.App. Lexis 22958 (7th Cir.)

Prison security and institutional safety goals are indeed a most compelling state interest, and plaintiff concedes as much, however, defendants cannot merely brandish the words "safety and security" and expect that their actions will automatically be deemed constitutionally permissible conduct. Indeed, "inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the [A]cts requirements." Senate Report No. 103-111,103 Cong.1st. Sess. 1993. Otherwise ["seemingly reasonable regulations based on speculation, exaggerated fears, or thoughtless policies cannot stand."] See, H.R. Rep.No.103-88,103rd Cong. 1st. Sess.(House Report 1993).

- 7 -

Courts are charged with intervention where prison regulations imperil constitutional rights. Procunier ,416 U.S. at 406,94 S.Ct. at 1807-1808. ["When a prison regulation or practice offends a fundimental constitutional guarantee, courts must discharge their duty to protect constitutional rights."] (citations omitted.) RLUIPA contains the same legal standards as 42 U.S.C.§2000bb,The Religious Freedoms Restoration Act (RFRA), and RLUIPA has been found constitutional as applied to the states. Cahrles v. Verhagen,. Moreover, the government cannot prove least restrictive means unless it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. See, eg. United States v. Playboy Entertainment Group Inc.,529 U.S. 803,824(2000) (Finding in the context of First Amendment challenge to speech restrictions, that "[A] court should not a plausable, less restrictive alternative would be ineffective.") ; City of Richmond v. J.A. Croson, 488 U.S.469,507(1989)(Finding city's minority set-aside program was not narrowly taylored in part because the city had not considered whether race-nuetral measures would have achieved the governments interest.); Hunter Ex.Rel.Brandt v. Regents of Univ. of Calif., 190 F.3d 1061, 1078(9th Cir.1999)(Finding that government "neglected to undertake any consideration-- let alone serious good faith consideration" of race neutral alternatives)(Internal quotation marks and citation omitted.) Thus the government cannot meet it's burden by relying on post-hoc excuses for continuing to burden individuals religious beliefs. Jolly v. Coughlin,76 F.3d (2nd Cir.1996)(Finding that prison regulationsare "not insulated from scrutiny merely because the defendants brandish the concepts of public health and safety."). Further, in this case, least restrictive measures are already in place in the form of departmental rules and screening procedures which defendants have at their disposal. Inmates must wear a blue state shirt, fully buttoned upon leaving their cell. See, (plaintff's Aff. Ex.29), and religious medallions are to be worn under an inmates shirt. If this is not done, defendants have the option of writing a disciplinary report, and taking sanctions against the offender. It is a serious stretch of reality to say that plaintiff's medallion worn benieth his shirt would be utilized as a gang identifier. Religious request for non-traditional symbols or item must be processed through the Chaplain therefore giving the defendants another effective remedy to keep such

medallions restricted to adherents of appropriate religious denominations. See, (Plaintiff's Aff. Ex.9 (20 ILL.Adm.Code)), and lastly, IDOC.Rules(#205) provides for disciplinary actions and sanctions to be imposed if pentacle medallions are obtained and or misused as "gang identifiers". In light of these presented facts, defendants cannot maintain that a complete ban on pentacle medallions is the least restrictive means, and as applied DR.§425.90(c) is an ill conceived and exaggerated response.

### C. Defendants' ban on pentacle medallions violates plaintiff's right to equal protection of the law.

Defendants have arbitrarily discriminated against plaintiff's religion by confiscation and ban of plaintiff's pentacle medallion under the pretext that it is "potentially "gang Related", while allowing crosses and crucifixes which are well known and established gang identifiers. ["The regulation allows the cross to be worn when it is attached to a rosary, but not otherwise, even though the addition of a string of beads makes the ensemble more dangerous, and no less suitable as a gang symbol than the cross sole."] Sasnett v. Litscher, 197 F.3d 290 (7th Cir.1999)Also, ["for example, crucifixes and Christian crosses are objects and symbols that are also commonly used by gangs, but images of crosses are notubanned in the IDOC."] Goodman v. Snyder, No.00 c 0948 (N.D.Ill. 2-26-03); ["Beads, whether rosary, or Dhikr, or even crosses or crucifixes, once in the possession of an inmate may be displayed surrepitiously to facilitate gang identification..."] Campos v. Coughlin,854 F.Supp.194., Also see, (Plaintiff's Aff. Ex.31- Hendrix Deposition. at 13-21 thru 14-16, and Charles Ennis dep. at 80-15.) ["Plaintiff's free exercise of religion cannot be contingent upon administrative inconveniences, where such inconveniences are not greater than those presented by all prison rules. Enforcement problems are enherent in a prison setting whenever a security guard has to enforce a rule, and are no greater whether an inmate possesses or wears Santeria beads under clothing, as opposed to crucifixes or medals."] Campos v. Coughlin.  While prison officials need only make reasonable efforts to afford inmates an opportunity to practice their religion, they must be even handed. Alston v. DeBruyn,13 F.3d 1036,1039 (7th Cir.1994)

## C. Defendant's Affirmative Defenses Are Unsupported in fact or law, thereby entitling plaintiff to Summary Judgment.

Defendants in their answer to plaintiff's complaint and plaintiff Amended Complaint assert Three Affirmative Defenses: (1) Qualified Immunity; (2) 42 U.S.C.§1997e(e); and (3) The 11th Amendment of the United States Constitution. Defendants assertions are not supported in fact, and expressly contradicted by law.

### 1. Qualified Immunity.

Defendants claim that "at all times relevent herein, Defendants acted in good faith in the preformance of their official duties and without violating plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrin of qualified immunity." (Plaintiff's Aff. Ex.27(Defendant's answer to plaintiff's amended complaint))

The defense of qualified immunity protects officials from damages liability in civil rights cases unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v.Fitzgerald,457 U.S.800,818, 102 S.Ct. 2727(1982) also, Collyer v.Darling, 98 F.3d 211,228 n.18(6th Cir.1996) Cert. denied 520 U.S.1257(1997) (Stating officials not immune from declatory or injunctive relief.) It is established that individual state officials may be sued personally under §1983 for both injunctive relief and damages for acts done in their official capacity. Hafer v. Melo, 502 U.S.21(1991); Scheuer v. Rhodes, 416 U.S.232,237-38 (1974), and was also explained in Pennhurst State School & Hospital v. Halderman,465 U.S.89,102(1984) This derives from the rationale first articulated in ExParte Young 209 U.S.123,160(1908), because the state cannot authorize an act contrary to the constitution, a state official violating the constitution is "stripped of his official or representitive charictor, and was subject to the consequences of his official conduct." Government officials performing discretionary functions are entitled to qualified immunity that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights." Harlow. Whether an official may be held personally liable for his or her unlawful actions, therefore turns on "the objective reasonableness of the action assessed in the light of the legal rules that were

clearly established at the time it was taken. Wilson v. Layne, 526 U.S.603,614 (1999) (internal quotations omitted) State law or regulations may help identify officials who clearly had the duty to correct particular kinds of constitutional violation. Alexander v. Perril, 916 F.2d 1392,1398(9th Cir.1990) Officials are expected to use common sense in assessing their legal obligations.(Officer was not immune for conduct that "runs contrary to common sense, decency," and state regulations.) Sepulveda v. Ramirez,967 F2d at 1416.  Where defendant was under an affirmative duty to act, and fails to act, he may be held liable for consequences under statute governing deprivation of civil rights. Cochran v. Rowe,438 F.Supp. (1977) In order to be clearly established the contours of a legal right must be sufficiently clear that a reasonable official would understand that what he or she was doing violates that right. Anderson v. Creighton, 483 U.S.635,640 (1987) However, a plaintiff need not show that the very action in question has been previously been held unlawful. In reviewing a claim for qualified immunity the court asks two questions (1) Whether the plaintiff has asserted a voilation of a constitutional right., and (2) Whether the applicable constitutional standards were clearly established at the time in question. May v. Sheahan ,226 F.3d 876,881 (7th Cir.2000)

In this case it it clear that the constitutional protections of the First and Fourteenth Amendments, as well as the statutory provisions of 42 U.S.C.§2000cc (RLUIPA) and the protections contained therein , and even 775/35 1-25 (Illinois RFRA), and the administrative policies set forth in 20 Ill. Adm. Code under the authority of 730 ILCS 5/3-7-2 and 3-7-1 (Plaintiff's Aff. Ex.9), were established at all times pursuant to this action. Moreover, Plaintiff Via letters and grievances made these very protections known to the defendants (Plaintiff's Aff. Ex.(s) 20,24,26,and 31) and yet defendants chose not to act to even investigate the matter as required , or take affirmative action to alleviate the ongoing constitutional violations. Staff at Menard, specifically, Eugene McAdory, Tom Maue, Steve Keim, and Mavis Gross can be shown to be aware of RLUIPA prior to their ban on plaintiff's religious medallion, as official IDOC. Memoramdum from Eugene McAdory to All Chaplains specifically addresses RLUIPA. (Plaintiff's Aff. Ex.32). Due to their knowing Violations of the constitutional provisions of the First and Fourteenth Amendments, RLUIPA, ILRFRA, and 20 ILL.ADM.

Code, as well as ILCS 5/3-2-2-1(H),(M)(V), defendants are not entitled to qualified immunity.

2. 42 U.S.C.§1997e(e).

Defendants invokation of 42 U.S.C.§1997e(e), "Pursuant to the Prison Litigation Reform Act, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without prior showing of a physical injury."", is a complete mistatement of the applicable law, and the issue at hand. Although plaintiff in his supporting declaration alleged mental and emotional injury, plaintiff has made no claim for damages in connection with these injuries. Plaintiff's claim is for violations of the First and Fourteenth Amendments, and RLUIPA. ["It is certainly true that Mr. Cancel does not allege a physical injury. Neverthe less, it is equally true that he brought this action, inter alia, for alleged violations of his First Amendment rights rather than "mental and emotional injuries". Accordingly, §1997e(e) does not present an obstical to the instant action."] Cancel v. Mazzuca, 205 F.Supp. 2d 128 (S.D.N.Y. 2002). See, e.g. Rowe v. Shake, 196 F.3d 778,781-82 (7th Cir.1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained.") Amaker v. Hoponik, 1999 WL 76798, also see, Robinson v. Page, 170 F.3d 747 (7th Cir.1999); and Ford v. McGinnis, 198 F.Supp. 2d 363(S.D.N.Y.2001). In light of the foregoing, the defendant's second affirmative defense cannot stand legal scrutiny.

3. 11th Amendment.

Defendant's third and final affirmative defense of 11th Amendment immunity is again a complete misrepresentation of the applicable law. The state was not immune under 11th Amendment from suit by prisoners alleging violations of Religious Land Use and Institutionalized Persons Act.(RLUIPA), since state's acceptance of Federal funds for prison activities or programs on condition that it comply with RLUIPA constituted waiver of immunity. Gerhardt v. Lazaroff, 221 F.Supp. 2d 827 (S.D.ohio 2002). RLUIPA creates a private right of action for individual prisoners and grants the United States power to enforce the statute through injunctive and declatory relief. 42 U.S.C.§2000cc.2(a)(F).

Under §1983 "an official capacity suit against a state office holder is effectively an action against the state itself, and the state is not a "person" who may be sued under §1983. <u>Wlii v. Michigan Dept. of State Police,</u>491 U.S.58,71 (1989). But, although this rule, as well as the 11th Amendment, bars official-capacity claims for damages against state officials, (<u>Scott v. O'Grady,</u>975 F.2d 366,369(7th Ci.1992) Cert.denied, 508 U.S.942(1993)), the Supreme Court in <u>Will,</u> noted that "A state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because "official capacity actions for prospective relief are not treated as actions against the state."" <u>Will,</u>491 U.S. at 71 n.10 (quoting <u>Kentucky v. Graham,</u>473 U.S. at 167 n.14). Such claims for for prospective relief are not barred by the 11th Amendment. <u>Powers v. Summers,</u> 226 F.3d 815,819 (7tn Cir.2000); also see, <u>Ameritech Corp. v. McCann,</u>294 F.3d 582,586-87 (7th Cir.2002).

In light of the foregoing, it is clear that the defendant's third and final affirmative defense does not apply in this case . This being the case, the defendants stand before this Honorable Court defenseless to the plaintiff's complaint.

## CONCLUSION

WHEREFORE, Plaintiff, George P. Goodman Jr., requests this Honorable Court to enter partial Summary Judgment as to the liability of defendants McAdory, Maue, Keim, and Gross.  Plaintiff also moves for partial summary judgment in the form of declatory and injunctive relief in his favor as there are no genuine issues of material fact, and plaintiff is entitled to judgment as a matter of law.

ON THIS 22nd DAY OF
OCTOBER, 2004.

RESPECTFULLY SUBMITTED,

*George P. Goodman JR*

George P. Goodman Jr., pro se.

George P. Goodman Jr.
N-60799
P.O. Box-711
Menard, IL. 62259

- 13 -