IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE P. GOODMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No.   03-202-WDS |
| | ) |
| DONALD SNYDER, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is plaintiff's motion for a preliminary injunction (Doc. No. 20).  Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  He claims that the defendants deprived him of access to his pentacle, which he uses to practice his sincere religious beliefs.  He also claims that the defendants delayed a response to his grievance in violation of his Fourteenth Amendment right of access to the courts.  In this motion, plaintiff seeks an order directing the defendants to return his religious pentacle and allow him to wear it on a chain under his shirt.  The defendants failed to respond to the motion in a timely manner.

In order to obtain a preliminary injunction, plaintiff must show that: (1) he is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) he will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the defendants will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir. 1994).  If plaintiff meets this threshold burden, the inquiry evolves into a "sliding scale" analysis where these factors are weighed against one another. See *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).  However,

because plaintiff is a prisoner, injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2). Evidence pertaining to this motion was presented on September 9, 2004.

Plaintiff has a First Amendment right to freely exercise his religious beliefs. In order to succeed on his First Amendment claim, he must show that the defendants impeded his ability to exercise his sincere religious beliefs in a manner that is not reasonably related to a legitimate penological goal. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348(1987). In order to succeed on his RLUIPA claim, plaintiff must show that he is confined in a state prison that receives federal funds and that his exercise of religion is substantially burdened. The defendants can defeat this claim with evidence that the restriction furthers a compelling governmental interest and is the least restrictive means to further that interest. 42 U.S.C. § 2000cc-1(a).

Plaintiff is an inmate at Menard Correctional Center. He practices Wicca, a polytheistic religion. He worships a god (Oden) and a goddess (Freya), and believes that he is able to improve life events by harnessing and directing elemental forces. He practices his beliefs by casting spells that do no harm to others. He does not attempt to manipulate or control the behavior of others without their knowledge. He follows a religious diet, meditates, and practices divination. He has occasional access to Tarot cards but is not able to participate in Wiccan rituals or ceremonies.

Plaintiff owns a silver and black pentacle (a pentagram or five-pointed star within a circle). The star represents the spirit and four elements of nature: earth, fire, water, and air. The circle is braided with a Celtic knot. The pentacle has no sharp edges; there are no colors. The pentacle is a symbol of plaintiff's religious beliefs and functions as a protective amulet. Plaintiff believes the pentacle repels negative influences, psychic attacks, and curses. Before the pentacle was confiscated, plaintiff wore it openly during his confinement at Pontiac Correctional Center. Others did not easily recognize the pentacle as a religious symbol. One inmate confused it with gang

insignia. Plaintiff corrected the inmate and explained that the pentacle was a symbol of his religious beliefs. No gang activity resulted from this incident. In general, the pentacle aroused curiosity but did not generate animosity or hostility. Inmates at Menard are permitted to wear crosses, crucifixes, St. Christopher medals and other medallions. Members of prison gangs use some religious symbols to identify themselves as gang members. However, plaintiff does not believe that inmates use the pentacle as a symbol of gang affiliation. Plaintiff intends to wear his pentacle on a chain around his neck, with the pentacle resting next to his skin approximately 4 inches below the top of his shirt. Because the current policy requires inmates to wear a blue shirt that is buttoned to the neck, the pentacle would be hidden from view except when plaintiff showers or submits to a strip search.

Assuming that Menard Correctional Center receives federal funding, plaintiff is likely to succeed on his RLUIPA claim. A complete restriction on plaintiff's ability to possess and wear his pentacle is a substantial burden on his ability to exercise his religious beliefs. The defendants argue that a complete restriction is justified because the pentacle might be confused with a gang symbol. They believe it would be an "administrative nightmare" to permit plaintiff to wear the pentacle on some occasions and that the least restrictive means to prevent inmates from using the pentacle to promote gang activity is to prohibit the pentacle.

Prisons have a compelling interest in preventing gang activity.[1] However, an absolute restriction on plaintiff's access to his pentacle is not the least restrictive means of furthering that goal. Because plaintiff does not intend to display the pentacle, there is little risk that it will be used to promote gang activity, even if it is viewed by others in the shower or during a strip search. Moreover, the Court is not persuaded that the defendants would have difficulty enforcing a

---

[1] The initial rationale for the decision to confiscate plaintiff's pentacle was its size. Prison regulations restrict religious items to two inches in height or width. 20 Ill. Admin. Code § 425.90(c). No evidence suggests that plaintiff's pentacle exceeds the limit or that size is a basis for concern.

requirement that the pentacle be worn under a shirt when plaintiff leaves his cell.  Because the restriction on plaintiff's ability to exercise his religious beliefs cannot be easily measured or fully rectified via declaratory relief after trial, plaintiff is experiencing irreparable harm and has no adequate remedy at law.  While there is a remote possibility that some inmates will see plaintiff's pentacle and confuse it with a gang symbol, there is
 no reason to believe that confusion regarding plaintiff's gang affiliation will result in gang activity.  The defendants will not suffer irreparable harm if plaintiff is allowed to possess his pentacle and wear it under his shirt when he leaves his cell.  A preliminary injunction will not harm a public interest.

      IT IS RECOMMENDED that plaintiff's motion for a preliminary injunction (Doc. No. 20) be GRANTED as follows.  Until plaintiff's RLUIPA claim is resolved, the defendants should return plaintiff's pentacle and allow him to wear it under his shirt when he leaves his cell.

      **SUBMITTED:**     November 9, 2004     **.**

                                                  s/Philip M. Frazier
                                                **PHILIP M. FRAZIER**
                                                **UNITED STATES MAGISTRATE JUDGE**